# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **STACY NICOTRA,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**BAYSIDE NY HOMES LLC D/B/A KELLER WILLIAMS REALTY LANDMARK**, a New York limited liability company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

This case addresses a disturbing trend whereby realtors cold call consumers without consent violating the Telephone Consumer Protection Act ("TCPA"). Plaintiff Stacy Nicotra ("Plaintiff Nicotra" or "Nicotra") brings this Class Action Complaint and Demand for Jury Trial against Defendant Bayside NY Homes LLC doing business as Keller Williams Realty Landmark ("Defendant" or "KW Landmark") to stop the Defendant from violating the TCPA by sending telemarketing text messages to consumers without consent including sending multiple text messages to phone numbers that are registered on the national Do Not Call registry ("DNC"). As a result, Plaintiff seeks to obtain injunctive and monetary relief for all persons injured by Defendant's telemarketing practice. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to herself and her own

acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Stacy Nicotra is a resident of Long Island, New York.

2. Defendant KW Landmark is a limited liability company registered in New York with its headquarters located in Flushing, New York. Defendant KW Landmark conducts business throughout this District.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the TCPA, 47 U.S.C. § 227.

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant's wrongful conduct of calling the Plaintiff was directed from the Defendant and received by Plaintiff in this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States

likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in April 2024 alone, at a rate of 146.9 million per day. www.robocallindex.com (last visited May 9, 2024).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. Defendant KW Landmark is a real estate brokerage that assists consumers in buying and selling properties through its agents and shares in the commission for its services.[3]

14. KW Landmark endorses its most successful teams and agents who use cold calling to generate their business for the benefit of KW Landmark.

15. KW Landmark posted a video on its Youtube channel featuring a discussion with Jeff Cohn, the owner of Keller Williams Elite in Omaha.[4] Cohn provided training and coaching advice that included details on the number of calls a

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.kwnyhomes.com/
[4] https://www.linkedin.com/in/jeffmcohn/

real estate agent must make to generate sales, stating that 150 calls will result in 1 closing:



16. In the same video, Cohn goes on to speak about cold calling, stating, "In our market, with our average sales price, with our commission splits, it takes 150 call attempts. ***Those can be cold calls.*** Those could be door knocks. Those could be open houses. You're sitting and it can be text messages (as per Plaintiff's experience)…"[6] (emphasis added)

17. In the same video, Cohn discusses success that he had placing calls to consumers with expired property listing explaining how he uses Vulcan7, a program

---

[5] https://www.youtube.com/watch?v=GM24Sb_BjC4
[6] *Id.* – 12:31

that notifies real estate agents about expired property listings and that also provides consumer phone numbers, stating, "***My first lead gen was outbound cold calling***, so I signed up for a company called RedX for expired and FSBO information. ***Today I actually use Vulcan7 and every day they send me every house that's expired, FSBO, withdrawn, and you also get contact information for next of kin***…"[7] (emphasis added)

    18.    For instance, in a training video entitled 'Road To Your First Transaction' the video discusses the success its agents have had, with Ora Greenstein, a KW Landmark agent stating, "The most uncomfortable things you do, the closer to success you are. That I've learned this. Do the most uncomfortable things. Do you think it was easy for me to go to talk to? No, I'm still not really feeling comfortable. ***I don't feel comfortable cold calling. I don't like it. Do I still do it? Yes, because that's what separates you from others. Be uncomfortable as much as you can.***"[8] (emphasis added)

    19.    Greenstein has been recognized numerous times by Defendant for her closed sales volumes and performance as a real estate agent, including:

---

[7] *Id.* – 8:54
[8] https://www.youtube.com/watch?v=3A6Rr4wPwZA – 51:51



20. To make matters worse, KW Landmark sends lists of expired property listings to its agents on a daily basis, as per a video entitled Google Tools that was posted on the KW Landmark Youtube page which states, "We send group emails every single morning for sale by owner, expired's, daily updates…"[10]

21. Each month, KW Landmark provides training and coaching classes. In the March 2024 training, one day was focused entirely on lead generation, while another put the focus on prospecting, which is lead generation with training on how to find leads using neighborhood searches. Yet another day was dedicated to prospecting followed by another full day of lead generation:

---

[9] https://www.instagram.com/p/C143CP_rIMs/?hl=en
[10] https://www.youtube.com/watch?v=HLb5p08VS8E – 9:44



22. KW Landmark also features a training class that is taught by Michael Brown that is focused entirely on pursuing consumers with expired property listings which was posted on May 2, 2024 and is included on Defendant's calendar for all of their agents.

---

[11] https://www.facebook.com/photo?fbid=896733952460153&set=a.707112391422311









---

[12] https://www.instagram.com/p/C6eqsG2oLpt/?hl=en

[13] https://www.kwnyhomes.com/training-calendar

## PLAINTIFF NICOTRA'S ALLEGATIONS

23. Plaintiff Nicotra is the sole user of her cell phone number ending in 0776.

24. Plaintiff Nicotra uses her cell phone number for personal use only as one would use a telephone line in a home. It is not associated with a business.

25. In fact, Plaintiff Nicotra's cell phone number is unlisted to avoid unsolicited calls.

26. Plaintiff Nicotra registered her cell phone on the DNC on July 5, 2023 to avoid unsolicited calls and text messages.

27. On or around April 18 of 2024, Plaintiff Nicotra received multiple calls and text messages mainly from Keller Williams agents about an expired property listing.

28. Plaintiff Nicotra does not own a property and did not have a property listing that expired.

29. On April 18, 2024 at 10:57 AM, Plaintiff Nicotra received an unsolicited text message from Deirdre Folan, a KW Landmark real estate agent to her cell phone number, from 585-257-0948:



30. Later in the day at 11:08 AM on April 18, 2024, Plaintiff Nicotra received a 2nd unsolicited text message to her cell phone from Deirdre Folan, again from 585-257-0948:



31.     On April 19, 2024 at 10:57 AM, Plaintiff Nicotra received a 3rd unsolicited text message from Deirdre Folan, a KW Landmark real estate agent to her cell phone, from 585-257-0948:



32. The aforementioned text messages are all solicitations, offering realtor services to Plaintiff Nicotra and advertising KW Landmark.

33. Plaintiff never consented to receiving solicitation calls or text messages from Defendant or its agents.

34. In fact, Plaintiff Nicotra has never provided her cell phone number to any Keller Williams real estate agent.

35. Plaintiff was not looking to sell a home and was not looking to purchase a property.

36. The unauthorized text messages made by Defendant, as alleged herein, have harmed Plaintiff Nicotra in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

37. Seeking redress for these injuries, Plaintiff Nicotra, on behalf of herself and a Class of similarly situated individuals, bring suit under the TCPA.

## CLASS ALLEGATIONS

**38.** Plaintiff Nicotra brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant's agents texted on more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) to promote their realty services.

39. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons

whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Nicotra anticipates the need to amend the Class definitions following appropriate discovery.

40. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

41. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Nicotra and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant's conduct constitutes a violation of the TCPA;

(b) Whether Defendant sent multiple text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each text;

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

42. **Adequate Representation**: Plaintiff Nicotra will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Nicotra has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff

Nicotra and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Nicotra nor her counsel have any interests adverse to the Class.

43. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Nicotra and the Do Not Call Registry Class)**

44. Plaintiff Nicotra repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

45. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

46. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

47. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Nicotra and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

48. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Nicotra and

the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

49. As a result of Defendant's conduct as alleged herein, Plaintiff Nicotra and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

50. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Nicotra, individually and on behalf of the Class, prays for the following relief:

a. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Nicotra as the representative of the Class; and appointing her attorneys as Class Counsel;

b. An award of actual and/or statutory damages and costs;

c. An order declaring that Defendant's actions, as set out above, violate the TCPA;

d.  An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e.  Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Nicotra requests a jury trial.

DATED this 24th day of June, 2024.

                                      Respectfully Submitted,

                                      **STACY NICOTRA**, individually and on behalf of those similarly situated individuals

Dated: June 24, 2024

                                      <u>By: /s/ Stefan Coleman</u>
Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC
11 Broadway, Suite 615
New York, NY 10001
Telephone: (877) 333-9427

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
*Pro hac vice motion forthcoming*

*Attorneys for Plaintiff and the putative Class*